**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**RAINIE CARTER**,

          Plaintiff,

          v.

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY**,

          Defendant.

Case No. 25-cv-4512 (CRC)

---

**MEMORANDUM OPINION**

Plaintiff Rainie Carter filed this this lawsuit against her former employer, the Washington

Metropolitan Area Transit Authority ("WMATA").  She alleges that WMATA terminated her in

retaliation for reporting an unauthorized firearm near her office space.  WMATA has moved to

dismiss Carter's complaint, asserting that sovereign immunity bars her suit entirely and that, in

any event, she has failed to state a claim.  The Court concludes that while WMATA is not

shielded by sovereign immunity, Carter has not alleged a colorable wrongful termination claim.

Accordingly, the Court will grant WMATA's motion to dismiss.

## I.  Background

The following facts are alleged in the complaint and accepted as true for purposes of

resolving the motion to dismiss.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113

(D.C. Cir. 2000).  In April 2025, WMATA hired Carter as an employee relations specialist.  See

Compl. ¶ 10.  Her work area was situated in an open floor plan within WMATA's headquarters

at L'Enfant Plaza.  Id. ¶ 12.  Soon after starting her position, Carter purportedly saw two

unidentified men stop outside her work area.  Id. ¶ 13.  One of the men placed a silver handgun

with a brown handle on top of a filing cabinet "in plain view."  Id.  Carter alleges that under

federal regulations and WMATA's internal policies, only special police officers are authorized to carry weapons in WMATA office areas.  Id. ¶ 14.  She further contends that the only authorized weapons are "black service weapons, not silver handguns with brown handles."  Id.  Concluding that she had observed a "serious security violation," Carter reported the incident to an employee relations officer, who confirmed it was "not normal" for "unauthorized individuals to have weapons in the office area."  Id. ¶¶ 14–15.

Carter later described what she saw to a WMATA police officer.  See id. ¶ 16.  An internal investigator later "confirmed" her account using surveillance footage and indicated that the matter was under investigation.  Id. ¶¶ 16–18.  Carter also reported the incident to her direct supervisor.  Id. ¶ 19.  WMATA leadership—including Carter's supervisors—purportedly commended her for adhering to WMATA's "see something, say something" policy.  Id. ¶ 20.  Carter says she did not receive further information about the investigation or what actions, if any, were taken to address the "security breach."  Id. ¶ 21.

About three weeks after Carter reported the firearm, WMATA's Director of Labor and Employee Relations informed her that she was being terminated.  Id. ¶ 22.  The director purportedly told Carter that WMATA needed someone who could "take the ball and roll with it," "work independently," and "project the work into next week."  Id. ¶ 23.  Carter asserts that these reasons are "vague and pretextual" and "made no logical sense" given the nature of her work, which is "inherently reactive and case-specific, responding to employee issues as they arise rather than being projected weeks in advance."  Id.  Carter further alleges that she did not receive any negative feedback prior to her termination.  Id. ¶ 24.

In November 2025, Carter filed this lawsuit in the Superior Court of the District of Columbia.  She brought claims of retaliation under the D.C. Whistleblower Protection Act

("DCWPA") and wrongful termination under D.C. common law.  WMATA removed the case to this Court and promptly moved to dismiss the complaint.  Carter has since voluntarily dismissed her claim under the DCWPA, so only her wrongful termination claim remains.  See Pl.'s Notice of Partial Voluntary Dismissal at 1.  WMATA's motion is ripe for adjudication.

## II.    Legal Standards

### A.  Subject Matter Jurisdiction

A federal court must ensure it has subject matter jurisdiction before proceeding to the merits of a claim.  See Moms Against Mercury v. FDA, 483 F.3d 824, 826 (D.C. Cir. 2007).  If a claim is barred by sovereign immunity, the Court does not have jurisdiction over it.  See Burkhart v. WMATA, 112 F.3d 1207, 1216 (D.C. Cir. 1997).  It is the plaintiff's burden to establish subject matter jurisdiction.  See Knapp Med. Ctr. v. Hargan, 875 F.3d 1125, 1128 (D.C. Cir. 2017).  At the motion to dismiss stage, the Court accepts the allegations in the complaint as true.  See Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015).  The Court may also consider materials outside the pleadings when evaluating a motion to dismiss on jurisdictional grounds.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.  Failure to State a Claim

A party may move to dismiss a complaint on the grounds that it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is "plausible" if the plaintiff provides

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. Analysis

WMATA has moved to dismiss Carter's wrongful termination claim on two grounds. First, it claims that sovereign immunity bars Carter's claim because the decision to fire her was "discretionary." Second, it asserts that Carter's claim fails on the merits because she was an at-will employee, and the narrow exceptions that permit at-will employees to bring wrongful termination claims on public policy grounds are inapplicable.

### A. Sovereign Immunity

The Court first considers whether WMATA's claim is barred by sovereign immunity. WMATA is a quasi-governmental entity formed by an interstate compact (the "WMATA Compact"). See Burkhart, 112 F.3d at 1216. By signing the WMATA Compact, Maryland, Virginia, and the District of Columbia "conferred upon WMATA their respective sovereign immunities." Beebe v. WMATA, 129 F.3d 1283, 1287 (D.C. Cir. 1997). However, Section 80 of the WMATA Compact waives that sovereign immunity for "contract claims and claims of torts 'committed in the conduct of any proprietary function.'" Banneker Ventures, 798 F.3d at 1138 (quoting D.C. Code § 9–1107.01(80)). WMATA retains sovereign immunity for torts committed "in the performance of a governmental function." Id. (quoting D.C. Code § 9–1107.01(80)).

To distinguish proprietary functions from governmental functions, courts first ask "whether the activity amounts to a 'quintessential' governmental function, like law enforcement." Beebe, 129 F.3d at 1287 (quoting Burkhart, 112 F.3d at 1216). If the activity is not a quintessential governmental function, courts next consider whether it is "discretionary" or

"ministerial." Burkhart, 112 F.3d at 1216.  Discretionary duties "generally 'involve[] judgment, planning, or policy decisions' and are immunized as reflecting sovereign choices." Banneker Ventures, 798 F.3d at 1138 (alteration in original) (quoting KiSKA Const. Corp. v. WMATA, 321 F.3d 1151, 1159 n. 9 (D.C. Cir. 2003)).  Ministerial duties, by contrast, "are treated as not exercising distinctively sovereign powers and so are not immunized." Id.

Courts apply a two-part test to assess whether WMATA's actions are "immunized as discretionary." Id.  First, they determine whether a "statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Beebe, 129 F.3d at 1287 (quoting Cope v. Scott, 45 F.3d 445, 448 (D.C. Cir. 1995)).  If the tort claim "arises from a WMATA employee's failure to act as the law specifically prescribes," sovereign immunity does not apply. Banneker Ventures, 798 F.3d at 1138.  The same is true for conduct that is *proscribed* by law. Id. at 1143; see also Red Lake Band of Chippewa Indians v. United States, 800 F.2d 1187, 1196 (D.C. Cir. 1986) ("A government official has no discretion to violate the binding laws, regulations, or policies that define the extent of his official powers.").  If the conduct in question is left to the official's discretion, courts turn to the second step and consider "whether the exercise of discretion is grounded in social, economic, or political goals." Banneker Ventures, 798 F.3d at 1138 (citation omitted).  "Only actions grounded in such discretion retain 'governmental function' immunity." Id.

Since WMATA's employment decisions are not "quintessential" governmental functions, the Court begins with the two-part test to determine whether Carter's termination is protected by sovereign immunity. See Beebe, 129 F.3d at 1287.  In its motion to dismiss, WMATA contends that it "enjoys sovereign immunity for torts arising out of decisions involving the supervision of its employees, including their termination, because said decisions are discretionary in nature."

5

Mem. of P. & A. in Supp. of WMATA's Fed. R. Civ. P. 12(b)(1) & (6) Mot. to Dismiss ("Mot. to Dismiss") at 7. Not exactly. To be sure, the D.C. Circuit has recognized that decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature and thus immune from judicial review. See Burkhart, 112 F.3d at 1217. But contrary to WMATA's suggestion, not *every* action that is connected *in some way* to an employment decision amounts to a "discretionary" function. See Beebe, 129 F.3d at 1288 ("Of course, not every action connected in some way to an employment decision amounts to a discretionary function."); Sichani v. WMATA, No. 22-cv-1584 (CRC), 2023 WL 7279254, at *4 (D.D.C. Nov. 3, 2023) ("While courts have not, to date, found a WMATA employment action to be non-discretionary, the D.C. Circuit left open the door to that possibility.").

In this case, WMATA did not have discretion to fire Carter in retaliation for reporting the presence of an unauthorized firearm near her workspace. Courts in this district, including this Court, have recognized that government officials lack discretion to fire employees in violation of anti-retaliation statutes. See, e.g., Sampson v. D.C. Ret. Bd., No. 24-cv-2601 (TJK), 2025 WL 2494696, at *4–9 (D.D.C. Aug. 29, 2025) (denying a motion to dismiss because the D.C. Retirement Board was not immune from claims under the Dodd-Frank Act's whistleblower protection provisions); Sichani, 2023 WL 7279254 at *4 (holding that WMATA lacked discretion to fire an employee for whistleblowing activities protected by the National Transit Safety System Act and WMATA's internal anti-retaliation policy). Carter alleges that WMATA fired her in violation of the DCWPA, which prohibits supervisors from (among other things) retaliating against an employee because of the employee's "protected disclosure." See D.C.

6

Code § 1–615.53.[1]  She contends that her report was a "protected disclosure" because an unauthorized firearm in a crowded office is both a violation of law and a "substantial and specific danger to public safety."  Compl. ¶¶ 40–41.

WMATA does not contest that Carter made a protected disclosure.  Instead, it responds that Carter was not fired in retaliation for reporting a gun in the office, but rather because of her "demonstrated poor job performance."  Mot. to Dismiss at 8.  It cites to this Court's decision in Sichani, which recognized that the decision to fire an employee may be discretionary—and thus protected by sovereign immunity—if WMATA presents a "legitimate, non-retaliatory reason[]" for the termination.  2023 WL 7279254, at *4.

But this argument quickly runs out of steam.  In Sichani, the Court explained that the mere *assertion* of why an employee was fired isn't enough; WMATA also had to provide *evidence* supporting that assertion.  See id. at *4 n.6.  Since WMATA did not offer evidence of a "non-retaliatory basis" for the plaintiff's termination in that case, the Court concluded that it had waived its sovereign immunity.  See id. at *4–5.  WMATA submits that unlike in Sichani, it has offered evidence of a non-retaliatory basis for the firing, in the form of an e-mail chain purportedly documenting Carter's "numerous employment deficiencies."  Mot. to Dismiss at 8; see id., Ex. 1.

But this e-mail chain does not provide much evidence of anything.  The Court first notes that the e-mail cuts off in the middle of a sentence.  See id., Ex. 1 ("We request your concurrence on her removal from her . . .").  The e-mail describing Carter's subpar performance is sent by "Dan Pribich," but WMATA neglects to identify who Mr. Pribich is or what supervisory

---

[1] Both parties agree that WMATA "is not subject to the DCWPA."  Pl.'s Opp'n to Def.'s Mot. to Dismiss at 1.  But "WMATA cannot violate the [DCWPA] just because it maintains immunity with respect to [DCWPA]-based suits."  Sichani, 2023 WL 7279254 at *5.

authority (if any) he had over Carter.  The e-mail was also sent shortly before 5:00 p.m. on the day that Carter was allegedly fired, see Compl. ¶ 22, so it is unclear whether there is any causal connection between the message and her termination.  WMATA has also failed to provide any additional context for this e-mail, such as a declaration, affidavit, or even the remainder of the e-mail chain.  In short, this slapdash documentation of Carter's termination is not sufficient evidence of a "legitimate, non-retaliatory reason[]" for her termination.  Sichani, 2023 WL 7279254, at *4.

Because WMATA has not presented sufficient evidence of Carter's performance deficiencies or causally linked them to her termination, the Court finds itself in a similar position as Sichani.  Accordingly, the Court will assert subject matter jurisdiction over Carter's wrongful discharge claim and proceed to assess its merits.  Id. at *5.

B.  Wrongful Termination

In the District of Columbia, employees are subject to a presumption of at-will employment.  Perkins v. WCS Constr., LLC, No. 18-cv-751 (RC), 2018 WL 5792828, at *3 (D.D.C. Nov. 5, 2018).  They can be dismissed "at any time and for any reason, or for no reason at all."  Liberatore v. Melville Corp., 168 F.3d 1326, 1329 (D.C. Cir. 1999) (citation omitted). Notwithstanding this broad authority, courts have recognized a "very narrow" exception to the general rule based on "public policy" considerations.  See Donner v. Fox News Network, LLC, No. 23-cv-3401 (CRC), 2024 WL 1758689, at *9 (D.D.C. Apr. 24, 2024).  This public policy exception applies in two situations.  First, an at-will employee may bring a claim for wrongful termination if the "sole reason for the discharge is the employee's refusal to violate the law." Adams v. George W. Cochran & Co., 597 A.2d 28, 34 (D.C. 1991).  Second, an employee may state a claim if he or she was terminated after acting "in furtherance of a public policy 'solidly

based on a statute or regulation that reflects the particular public policy to be applied . . . to the defendant's conduct.'" Leyden v. Am. Accreditation Healthcare Comm'n, 83 F. Supp. 3d 241, 248 (D.D.C. 2015) (quoting Carl v. Child.'s Hosp., 702 A.2d 159, 163 (D.C. 1997) (Terry, J., concurring)).  The latter exception is commonly referred to as the Carl exception.

The Carl exception applies in two sets of circumstances.  The first arises when an employee is fired "for engaging in an activity when the employee points to a law that reflects a policy prohibiting retaliation against an individual for engaging in the type of activity the employee was engaged in." Donner, 2024 WL 1758689 at *10 (quoting Sichani, 2023 WL 7279254, at *6).  The second arises when an employee is terminated "for reporting illegal conduct when the employee points to specific laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained, whether or not the employer actually violated the law or regulation." Id. (quoting Sichani, 2023 WL 7279254, at *6).  Under either prong, the employee must point to "some identifiable policy that has been 'officially declared' in a statute or municipal regulation, or in the Constitution" and a "close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." Carl, 702 A.2d at 164 (Terry, J., concurring) (footnote omitted).

Carter submits that her wrongful termination claim may proceed on Carl's second track. See Pl.'s Opp'n to Def.'s Mot. to Dismiss at 15.  She lists several laws that, in her view, "clearly reflect a policy prohibiting the activity about which [she] complained."  These include: (1) 18 U.S.C. § 930, which makes it unlawful to "knowingly possess[] or cause[] to be present a firearm or other dangerous weapon in a Federal facility"; (2) D.C. Code § 7–2509.07(a)(1), which prohibits carrying a licensed pistol in a "building or office occupied by the District of Columbia, its agencies, or instrumentalities"; and (3) D.C. Code § 22–4504, which makes it unlawful to

carry a pistol in the District of Columbia without a license.  Id. at 15, 17.  These statutes, she says, reflect a public policy that "unauthorized firearms should not be present in government and transit facilities, and individuals who observe such violations should report them to the appropriate authorities."  Id. at 17.

Regardless of whether these statutes advance such a policy, Carter has confused the identity of the party that allegedly engaged in the illegal activity.  The Carl exception applies when the employee complains about the illegal activity of the *employer*, not some third party. See, e.g., Perkins, 2018 WL 5792828, at *8–9 (denying a motion to dismiss when an employee was fired for reporting criminal threats of violence made by her company's vice president); Washington v. Guest Servs., Inc., 718 A.2d 1071, 1080 (D.C. 1998) (concluding that an employee may bring a wrongful termination claim after she was fired for reporting her employer's violations of health and food regulations); Vreven v. Am. Ass'n of Retired Persons, 604 F. Supp. 2d 9, 14 (D.D.C. 2009) (holding that a former employee stated a claim under the Carl exception based on allegations that she was fired reporting her employer's abuse of its tax-exempt status).  As explained in Carl, the exception is grounded in the reasoning that "[e]mployees are protected against *employer actions* that contravene fundamental state policy." 702 A.2d at 164 (Terry, J., concurring) (emphasis added).  Accordingly, "the public policy exception presents no impediment to employers that operate within the bounds of law."  Id.

Carter has not alleged that WMATA or its personnel violated the criminal statutes listed above.  Instead, she asserts that "two men" entered WMATA's offices with the handgun. Compl. ¶ 13.  She does not allege any connection between the men and WMATA.  Nor does she allege that WMATA itself somehow aided a violation of the law by permitting their unauthorized entry.  On the contrary, the complaint contends that the presence of "unauthorized individuals"

10

armed with a non-standard-issued weapon was precisely what made the conduct abnormal and therefore worthy of reporting.  Id. ¶¶ 14–15, 17.  It further alleges that WMATA officials promptly responded to her report by investigating the matter and commending her for her vigilance.  See id. ¶¶ 15–20.  Put another way, Carter has not explained how the alleged conduct by an unidentified third party fits within Carl's very narrow exception.  See Bereston v. UHS of Del., Inc., 180 A.3d 95, 110 (D.C. 2018) ("When this court formulated the Adams-Carl exception to the doctrine of at-will employment, we took pains to emphasize that the tort of wrongful discharge in contravention of public policy is a very narrow one.").  Because Carter's employment was otherwise at will, her wrongful termination claim fails to leave the station.

## IV.  Conclusion

For the foregoing reasons, the Court will grant [4] WMATA's Motion to Dismiss.  A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  July 15, 2026

11